# PITTSBURG CONSTRUCTION CO. *v.* GANNON.

---

PRINCIPAL AND AGENT; EVIDENCE: MASTER AND SERVANT; PHYSICIANS AND SURGEONS; CONTRACTS; RATIFICATION; DIRECTION OF VERDICT; INSTRUCTIONS TO JURY.

1. At what stage of the evidence declarations by an agent of the fact of his agency will be received, is largely within the discretion of the trial court.

2. In an action by a physician against a construction company for professional services rendered an injured employee, where one of the questions is whether a representative of the company employed the plaintiff to render the services and another is whether its responsible head ratified such employment, evidence is admissible that the company settled with the employee for his injuries as tending to show that the latter was injured in the line of his duty.

3. It is not error for the trial court to refuse to direct a verdict for the defendant in an action by a physician against a construction company to recover for professional services rendered an injured employee while he was in a hospital where he received treatment for more than a month, where the evidence is conflicting as to whether a representative of the company employed the plaintiff to render the services, and there is doubt whether he had implied authority to bind the company; but the evidence tends to show that on the day the employee was taken to the hospital the responsible head of the company had knowledge of that fact, and, although he received a bill shortly after the treatment was commenced, did not deny liability on the part of the company until the receipt of a final bill a month later; nor is it error in such a case for the trial court to refuse a prayer for instruction asked by the defendant to

---

Note.—On the question of authority of agent or other representative to employ medical service for employee or other third person, see note in 20 L.R.A. 695.

the effect that unless the services rendered by the plaintiff were performed in pursuance of an express contract made by an agent who had full authority to bind the defendant company, the verdict must be for the defendant.

No. 2970.   Submitted January 4, 1917.   Decided February 5, 1917.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action by a physician to recover for professional services rendered.                                          *Affirmed.*

The Court in the opinion stated the facts as follows:

Appeal from a judgment in the supreme court of the District in an action by the appellee, James A. Gannon, a physician and surgeon, for professional services rendered an employee of the appellant, the Pittsburg Construction Company.

The evidence for the plaintiff tended to show that the defendant is a Delaware corporation owned and controlled by a Mr. Thomas Hampton. In 1913 the defendant company was engaged in building a railroad from Wisconsin avenue and Bradley lane to Great Falls. Among its employees was John W. Hoffman, who, in June of that year, sustained a fracture of a leg and was otherwise injured by jumping or falling from one of defendant's engines. T. Earl Hampton, son of said Thomas Hampton, assisted by the defendant's bookkeeper, immediately took the injured man to Georgetown University Hospital, where Dr. Gannon, the plaintiff, was an assistant.

According to the witnesses for the plaintiff, young Hampton stated that he was the general manager of the defendant company; that Hoffman had been hurt on "our work;" that he wanted him to receive every attention, and that the company would pay the bill. About August 1st the plaintiff sent a bill to the defendant company, but heard nothing from it. Plaintiff continued to treat Hoffman until August 18th, when he was discharged as cured, and on September 1st, plaintiff sent a bill covering his entire charges to the company. To this latter bill

plaintiff received an answer from Thomas Hampton declining to pay the bill, "for the reason that the President (Hampton) would not be responsible for any fees which were contracted for outside of his own office, and that he did not recognize the general manager (T. Earl Hampton) as his agent in a deal of that kind." Plaintiff's evidence further tended to show that at the trial of the case in the municipal court Thomas Hampton testified that his son was general manager of the defendant company. Hoffman, testifying for the plaintiff, was permitted to state, over the objection and exception of the defendant, that the defendant had made a settlement with him for the injury he sustained.

Thomas Hampton, testifying for the defendant, did not deny that he was the alter ego of the defendant company. He stated that his son, T. Earl Hampton, was "merely a foreman or superintendent of said company, the same as a number of others employed in a similar character;" that he and his son lived together; that he could not remember "whether he testified in the municipal court that when he was not there his son was his representative. * * * Hoffman was on the engine and had a foreman with him and a crew. Did not know that Hoffman had been hurt until that evening after he was hurt, when Earl Hampton told witness about taking Hoffman to Georgetown Hospital, and that his leg was broken." Witness visited Hoffman at the hospital about two weeks after the accident. T. Earl Hampton, testifying for the defendant, denied that he had ever promised Dr. Gannon that the defendant company would be responsible for his bill. He admitted on cross-examination that when his father was not present "witness represented him in minor or trifling cases."

*Mr. P. H. Marshall* and *Mr. Wm. H. Whaly* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

A general exception was noted to the action of the court in receiving evidence to the effect that young Hampton, when he arrived at the hospital with the injured man, alluded to himself as the general manager of the defendant company. It now is urged that this proof was admitted out of time. This contention should have been made in the trial court, but, aside from the failure of the defendant in that regard, it may be observed that the question as to when such evidence shall be received is largely within the discretion of the trial court. *Harris* v. *Fitzgerald*, 75 Conn. 72, 52 Atl. 315.

It next is urged that the court erred in permitting Hoffman to testify that the defendant had settled with him for his injuries. Evidence of this character tended in some degree to show that Hoffman was injured in the line of his duty, and that there was at least a question as to the responsibility of the defendant for such injuries. Therefore this evidence would have some bearing upon the question of the probability of young Hampton promising that the defendant would be responsible for his medical and surgical attention, and, in the circumstances disclosed by the evidence, whether Hampton, Senior, ratified and adopted what had been done by his son.

At the close of all the evidence a motion was made for a directed verdict for the defendant, and the refusal of the court to grant this motion is assigned as error. It is conceded that the evidence is conflicting on the question whether young Hampton undertook to charge the defendant company, and well it may be, for several witnesses testified for the plaintiff on this point, and the only evidence to the contrary was the testimony of young Hampton. It may be noted that, notwithstanding that the defendant's bookkeeper assisted young Hampton in taking Hoffman into the hospital, he was not called as a witness. Without stopping to inquire whether, under the facts of this case, young Hampton had implied authority to employ a physician and surgeon at the defendant's expense (see *Texas Bldg. Co.* v. *Albert*, 57 Tex. Civ. App. 638, 123 S. W. 716; *Cincinnati,*

*I. St. L. & C. R. Co.* v. *Davis,* 126 Ind. 99, 9 L.R.A. 503, 25 N. E. 878; *Harris* v. *Fitzgerald,* 75 Conn. 72, 52 Atl. 315), it is clear that the action of the court may be sustained upon another ground. Young Hampton lived with his father, who himself testified that the evening of the accident his son informed him of it and that he had taken Hoffman to Georgetown hospital. Not only that, but it is nowhere denied that he received the bill sent him by the plaintiff during the course of Hoffman's treatment and that not until the receipt of the final bill a month later did he indicate any intent to avoid payment for the services rendered his employee. Quite apart, therefore, from young Hampton's authority to bind the defendant, there was ample evidence to go to the jury on the question of ratification.

The refusal of the court to charge the jury that unless they found that the services rendered by the plaintiff "were performed in pursuance of an expressed contract, made by an agent, who had full authority to bind the defendant company, their verdict must be for the defendant," also is assigned as error. This proposed charge failed to take into account the evidence of ratification, and was otherwise objectionable in that it required greater formality when the services of the plaintiff were sought and obtained than the law requires.

There were other requests to charge. However, we do not deem it necessary to discuss them, or the vague and general exceptions to the charge as given.

Finding no reversible error, we affirm the judgment, with costs.                                         *Affirmed.*